# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

CEDRIC PERRY and SHEILA PERRY                                              PLAINTIFFS

v.                              No. 3:11CV00048 JLH

STEVENS TRANSPORT, INC.; and
RICHARD KIRSCHKE[1]                                                         DEFENDANTS

LOUISIANA COMMERCE & TRADE ASSOCIATION                                      INTERVENOR

## OPINION AND ORDER

This action arises from a collision between two commercial trucking rigs on September 30, 2008. The complaint alleges that Richard Kirschke was driving through the parking lot of a Flying J truck stop in West Memphis when the trailer of his truck struck the cab of the vehicle occupied by Cedric Perry. Kirschke has testified that, at the time of the collision, he was in first gear and driving no more than three miles per hour. The collision caused Perry, who was parked and sleeping, to fall from his bunk bed, strike his head on the inside of the truck, and strike his shoulder on a dresser. Kirschke admitted to Perry at the time, and to his employer, Stevens Transport, Inc., on the telephone afterward, that the accident had been his fault and that it had been preventable. Stevens Transport, in its pleadings, has admitted vicarious liability based on the doctrine of *respondeat superior*.

The plaintiffs allege that Stevens Transport was negligent in hiring, training, supervision or monitoring, and retention of Kirschke, so it is directly liable, as well as vicariously liable. The plaintiffs seek compensatory and punitive damages. The defendants have moved for summary judgment on the issues of punitive damages and whether Stevens Transport is directly liable. For the following reasons, that motion is granted.

---

[1] The original complaint, and numerous subsequent pleadings by both parties, spelled the defendant's surname without a *k*, and the docket follows suit. Subsequent evidence, however, makes it clear that his name is Kirschke, not Kirsche. The Clerk is directed to correct the docket.

I.

A court should enter summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *PHL Variable Ins. Co. v. Fulbright McNeill, Inc.*, 519 F.3d 825, 828 (8th Cir. 2008). A genuine dispute exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing sufficient to establish a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

II.

The primary issue is this: viewing the defendants' conduct in the light most favorable to the plaintiffs, could punitive damages be assessed against Kirschke or Stevens Transport?

The defendants argue that they are entitled to summary judgment on the plaintiffs' claims for punitive damages because the plaintiffs have produced no evidence that Stevens Transport or Kirschke acted with malice, conscious indifference, or reckless disregard for public safety.

In response, the plaintiffs first argue, briefly, that the punitive damages issue is not ripe, as more evidence will likely be discovered before and during trial that would contribute to an allowance of punitive damages. They do not, however, present an affidavit or declaration pursuant to Fed. R. Civ. P. 56(d). This case has been pending for well over a year, much discovery has already taken place, the key parties have been deposed, and the motion cut-off deadline is near. *See* Document #53 (various depositions attached); Document #57 (motion deadline: July 27, 2012). Thus, the summary judgment motion is ripe for decision. *See Ray v. Am. Airlines, Inc.*, 609 F.3d 917, 922 (8th Cir. 2010) ("Although discovery does not have to be completed before a district court can grant summary judgment, 'summary judgment is proper only after the nonmovant has had adequate time for discovery.'" (citation omitted)).

Apart from their argument that discovery has not concluded, the plaintiffs argue that the Court should reserve ruling on punitive damages until the close of evidence at trial. *See Carvin v. Ark. Power & Light Co.*, Civ. Nos. 90-6055, 90-6109, 1991 WL 540481, at *6 (W.D. Ark. Dec. 2, 1991) (noting that that court's "standard practice" was to "determine whether the jury should receive a punitive damage instruction at the close of evidence"). While it is appropriate in some cases to reserve judgment on punitive damages until the close of trial, it is not invariably so. *See, e.g., Millbrook v. Dillard's, Inc.*, No. 4:06CV01103, 2008 WL 615901, at *5 (E.D. Ark. Mar. 3, 2008) (granting, by this Court, of a motion for summary judgment); *In re Aircraft Accident at Little Rock*, 351 F.3d 874, 876 (8th Cir. 2003) (summary judgment appropriate "if the evidence was such that no

reasonable jury could have found grounds for awarding punitive damages"); *Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1071 (8th Cir. 2005) (noting that even if plaintiff's underlying claims had survived summary judgment, the punitive damage claims would not have). Here, certain evidence that would be admissible on the punitive damages claim would be inadmissible and perhaps unfairly prejudicial apart from that claim, so fairness dictates that the issue of whether the evidence would support a verdict awarding punitive damages should be addressed before trial.

On the merits, the plaintiffs argue that they are entitled to punitive damages because Kirschke drove, and Stevens Transport permitted him to drive, despite the fact that both he and Stevens Transport knew or should have known, given Kirschke's past driving record, that his driving would likely result in serious harm to the public.

On October 9, 2006, after completing a training program, Kirschke began working for Stevens Transport as an over-the-road commercial truck driver. Between the time of his hiring and the collision with Perry, Kirschke was involved in the following incidents while on the job:

> 1.    On December 6, 2006, Kirschke, as a trainee-driver, rolled his tractor-trailer into a curb at a truck stop in Joplin, Missouri. The curb bent the license plate attached to the truck's front bumper.
>
> 2.    On January 8, 2007, Kirschke, again as a trainee-driver, struck a curb with one of his trailer's tires when he turned into a parking lot in Reading, Pennsylvania. The collision bent the tire's rim.
>
> 3.    On June 19, 2007, Kirschke scraped the corner of a parked trailer with his tractor-trailer's right front fender at a Wal-Mart in Plainview, Texas. Kirschke had been attempting to perform a tight parking maneuver.
>
> 4.    On March 18, 2008, Kirschke was ticketed for speeding in Oregon. He had been driving his tractor-trailer 65 miles per hour in a 55 miles-per-hour zone.
>
> 5.    On June 3, 2008, Kirschke struck another tractor-trailer's fender with the trailer of his truck while parking in Annapolis, Maryland.

      6.     On September 11, 2008, while training another driver, Kirschke scraped the hood of a car behind him when he attempted to reverse out of a dead-end path in an El Paso, Texas, parking lot. Kirschke was issued a ticket for "illegal backing."

Kirschke admits that all of these incidents were preventable, as defined by the Federal Motor Carrier Safety Regulations,[2] and he admits that his actions surrounding these incidents violated relevant safety rules. None of these incidents resulted in an injury to any person. Stevens Transport was informed of each incident, and it required Kirschke to take remedial training after each one. Kirschke passed the training and remained employed with Stevens Transport. Kirschke has never had his license, permit, or privilege to operate a motor vehicle denied or revoked, he has never been convicted or charged with driving under the influence of alcohol or drugs, and he has never been refused liability insurance.

Inasmuch as this is a diversity case and the accident occurred in Arkansas, the law of the State of Arkansas governs. *See Burger Chef Sys., Inc. v. Govro*, 407 F.2d 921, 923 (8th Cir. 1969). In Arkansas, the standard for an award of punitive damages is set by statute:

> In order to recover punitive damages from a defendant, a plaintiff has the burden of proving that the defendant is liable for compensatory damages and that either or both of the following aggravating factors were present and related to the injury for which compensatory damages were awarded:
>
> (1) The defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred; or
>
> (2) The defendant intentionally pursued a course of conduct for the purpose of causing injury or damage.

---

[2] The relevant regulation defines a "preventable accident" as one that involves a "commercial motor vehicle" and "that could have been averted but for an act, or failure to act, by the motor carrier or the driver." 49 C.F.R. § 385.3; Document #53-1, at 39.

Ark. Code Ann. § 16-55-206 (2003). The plaintiffs must provide clear and convincing evidence in order to meet this burden. *Id*. § 16-55-207. Negligence, however gross, will not support an award of punitive damages in Arkansas. *Aircraft Accident,* 351 F.3d at 877 (citing *La. and N.W.R.R. Co. v. Willis*, 289 Ark. 410, 415, 711 S.W.2d 805, 808 (1986)); *Edwards v. Stills*, 335 Ark. 470, 484, 984 S.W.2d 366, 373 (1998).

In ruling on a motion for summary judgment, the court must "view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254, 106 S. Ct. at 2513. Unless a reasonable jury could conclude by clear and convincing evidence that Stevens Transport and Kirschke knew or ought to have known that their conduct would naturally and probably result in injury or damage, and that they continued the conduct with malice or in reckless disregard of the consequences from which malice may be inferred, summary judgment is proper. *See Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 610 (8th Cir. 2007).

In the context of vehicle accident cases, the Arkansas Supreme Court historically "has been very cautious, perhaps overly so, about affirming punitive damages . . . ." *Nat'l Bank of Commerce v. McNeill Trucking Co.*, 309 Ark. 80, 88, 828 S.W.2d 584, 588 (1992) (Dudley, J., concurring) (detailing history and collecting cases); *cf. Aircraft Accident,* 351 F.3d at 876 ("[P]unitive damages 'are not a favorite of the law' in Arkansas . . . ." (citation omitted)). As of 1992, according to Justice Dudley, the Arkansas Supreme Court had "held that there was the requisite substantial evidence of willful and wanton misconduct in only two classes of vehicle accident cases[:] (1) when the defendant driver was drinking, or drunk, or using drugs, and (2) when the defendant was racing." *Nat'l Bank*, 309 Ark. at 88, 828 S.W.2d at 588 (Dudley, J., concurring) (internal citation omitted). That being said, since 1992, the Arkansas Supreme Court has not strictly adhered to Justice Dudley's rubric.

Rather, it has stated, "Whether a vehicle is being operated in such a manner as to amount to wanton or willful conduct in disregard of the rights of others must be determined by the facts and circumstances in each individual case." *D'Arbonne Constr. Co. v. Foster*, 354 Ark. 304, 309, 123 S.W.3d 894, 898 (2003). In *D'Arbonne*, for example, the Arkansas Supreme Court permitted a punitive damages award to stand, even though there was no alcohol or racing involved, when evidence was presented indicating, among numerous other things, that the brakes of the tractor-trailer causing the collision had been intentionally disabled in order to avoid having to perform proper maintenance. *Id.* at 310-12, 123 S.W.3d at 900-01.

In *Wheeler v. Carlton*, a commercial tractor-trailer collided with a smaller vehicle and the truck driver was subsequently sued for negligence along with his employer. No. 3:06-CV-00068, 2007 WL 30261 (E.D. Ark. Jan. 4, 2007). Much like the present case, the plaintiff in *Wheeler* asserted a claim against the employer for negligent hiring and retention and a claim for punitive damages. *Id.* at *1. The plaintiff in *Wheeler* produced evidence that the defendant driver had, over roughly a six-year span prior to the incident in question, received numerous police citations, including seven for speeding, one for violation of lane usage laws, two for failure to stop at a stop sign, and one for following too closely. *Id.* at *9-10. Most, if not all, of these citations occurred while the defendant driver was driving a commercial vehicle. One of the speeding citations was for driving 93 miles per hour in a 60 miles-per-hour zone. *Id.* at *9. The defendant driver had also twice been reported by his employer as having struck a stationary object, and his driver's license had, at one point, been forfeited for a four-month period. *Id.* at *9-10. Despite all of this, Judge Eisele held that summary judgment was appropriate as to punitive damages because

> no reasonable jury could find that [the employer] knew, or ought to have known, in light of the surrounding circumstances, that its conduct would naturally and probably

7

result in injury and that it continued such conduct in reckless disregard of the circumstances from which malice may be inferred.

*Id.* at *11.

In so holding in *Wheeler*, Judge Eisele relied heavily upon *Elrod v. G & R Construction Co.*, 275 Ark. 151, 628 S.W.2d 17 (1982). In *Elrod*, the defendant truck driver "had been involved in some six motor vehicle accidents, two of which resulted in personal injury" and "had citations for failure to yield and unsafe operation of a vehicle unrelated to the accidents mentioned above." *Id.* at 153, 628 S.W.2d at 18. Regardless, the Arkansas Supreme Court stated that:

> Even in light of [the employee]'s prior bad driving record, we can only surmise that in some of those instances, he may have negligently operated his motor vehicle. There is nothing in the record . . . which would have put the employer on notice or conceivably enabled the employer to foresee that [its employee] would commit a willful and wanton act or possibly an intentional act.

*Wheeler*, 2007 WL 30261, at *10 (quoting *Elrod*, 275 Ark. at 155, 628 S.W.2d at 19).

Here, the plaintiffs have provided the Court with no convincing reason to distinguish or ignore *Wheeler* and *Elrod*. In those cases, the courts declined to allow punitive damages even though a commercial tractor-trailer driver caused a collision while having a worse driving record than Kirschke. Kirschke's record, at the time of the collision, consisted of striking a curb (twice), scraping another vehicle (thrice), and exceeding the speed limit by ten miles per hour (once). The *Wheeler* defendant had nearly three times as many incidents, several of which were more severe (e.g. driver's license forfeiture, 33 miles per hour over the speed limit). The *Elrod* defendant was involved in six vehicular collisions—two of which were severe enough to result in an injury to a person—and he had received several other citations, including one for unsafe operation of a vehicle. Even the plaintiffs acknowledge the severity of the *Elrod* defendant's record. *See* Document #52-1, at 19 ("[The *Elrod*

8

defendant], admittedly, had an awful driving record."). There can be little debate that non-injury scrape-and-bump collisions are less severe than collisions which cause a personal injury.

The plaintiffs argue that *Elrod* is distinguishable because in *Elrod* the truck driver had never before committed the same damaging maneuver—negligently pushing another vehicle into an intersection—whereas Stevens Transport was aware of several incidents in which Kirschke had committed essentially identical driving errors as the one in which he injured Cedric Perry. *Elrod* does not, however, provide details regarding the previous six accidents of the truck driver in question. The little detail that is provided in *Elrod*—that two of the employee's past accidents involved personal injury—actually cuts against the plaintiffs in that the employer in *Elrod* was on notice that its employee had caused actual injuries with his past driving. Kirschke, in contrast, had a driving record devoid of injuries to others. If punitive damages were not permissible in *Elrod*, where the driver previously had caused injury, they certainly are not warranted here.

The plaintiffs attempt to avoid this conclusion by providing affidavits from two commercial trucking experts, both of whom essentially state that Stevens Transport "knew or ought to have known that Kirschke would cause additional crashes which would injure and damage others." Document #53-10, at 2 (conclusion of Larry Cole); *see also* Document #53-11, at 2 (Christina Kelly: "Stevens Transport Inc. needlessly endangered the motoring public by keeping Mr. Kirschke on the roadway when they had knowledge that his continuance would result in additional crashes."). To the extent that the conclusions of these experts simply reiterate the legal standard for punitive damages in Arkansas, the Court does not find that they would help the trier of fact. *See* Fed. R. Evid. 702(a) (expert's testimony only admissible if it "help[s] the trier of fact to understand the evidence or to determine a fact in issue"); *In re Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d 899, 905 (8th Cir. 2005)

("When the expert opinions are little more than legal conclusions, a district court should not be held to have abused its discretion by excluding such statements."); *Estes v. Moore*, 993 F.2d 161, 163-64 (8th Cir. 1993) (per curiam) (statement of legal conclusion by purported expert was properly excluded). Regardless, while the two experts assail Stevens Transport's retention policy as failing to meet industry standards, neither comes close to explaining why Stevens Transport should have known that Kirschke's conduct would naturally and probably result in injury when his six prior driving incidents were relatively minor and involved no injuries whatsoever.

In conclusion, the plaintiffs have not provided evidence that would allow a reasonable jury to find that either Stevens Transport or Kirschke knew or ought to have known that their conduct would naturally and probably result in injury or damage to Cedric Perry. Nor have they produced evidence showing that Stevens Transport or Kirschke intentionally pursued a course of conduct for the purpose of causing injury or damage to Cedric Perry. Thus, summary judgment must be granted as to punitive damages.

**IV.**

The defendants next move for summary judgment on the plaintiffs' negligence claims against Stevens Transport, arguing that claims that an employer is directly liable for an employee's negligence are only allowable when the employer denies that it is vicariously liable. According to the Arkansas Supreme Court, when an employer admits vicarious liability, the plaintiffs are allowed to maintain a claim on only one theory of recovery. *See Kyser v. Porter*, 261 Ark. 351, 358, 548 S.W.2d 128, 132 (1977) ("Our cases hold that a negligent entrustor, though guilty of a separate tort, is only liable to a third party for his entrustee's negligence, if any."); *Elrod*, 275 Ark. at 154, 628 S.W.2d at 19 ("[W]e are inclined to follow the majority view which allows plaintiff[s] to proceed on only one

10

theory of recovery in cases where liability has been admitted as to one theory of recovery."); *Wheeler*, 2007 WL 30261 at *11-12 (relying on *Elrod* and *Kyser* in holding that a plaintiff could not proceed against a trucking company for negligent hiring and retention where the employer had admitted liability under *respondeat superior*). This Court has already acknowledged this rule in a previous decision. *See Regions Bank v. White*, No. 4:06CV01475, 2009 WL 3148732, at *5 (E.D. Ark. Sept. 24, 2009) ("Because Daily Express has conceded vicarious liability for any negligent acts of White's, Regions cannot proceed against Daily Express on the additional theories of negligent retention, hiring, or entrustment."). There is an exception to the rule, however, which occurs "when a plaintiff has a valid claim for punitive damages against the employer based on its independent negligence in hiring and retaining the employee." *Wheeler*, 2007 WL 30261 at *12. As explained, the plaintiffs do not have a valid claim for punitive damages against Stevens Transport, so the exception does not apply and summary judgment is proper on the plaintiffs' various negligence claims brought directly against Stevens Transport.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED. Document #49. The plaintiffs' claims for punitive damages against both Kirschke and Stevens Transport are DISMISSED with prejudice. The plaintiffs' various negligence claims against Stevens Transport for direct liability are also DISMISSED with prejudice.

IT IS SO ORDERED this 9th day of July, 2012.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE